[Crim. No. 9455. Second Dist., Div. Three. Oct. 5, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. LEONARD LAMB, JR., Defendant and Appellant.

Bradford A. Arthur for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—Defendant was charged with driving an automobile while addicted to narcotics in violation of section 23105 of the Vehicle Code.[1] He pleaded not guilty and waived trial by jury. The court found defendant guilty as charged and he appeals from the judgment.

On April 16, 1963, at approximately 3:35 p.m. Officers Fesler and Dorrell were driving on Avenue 43 in the City of Los Angeles when they recognized the defendant in a car ahead of them. The officers, having had previous contact with the defendant in relation to narcotic offenses, proceeded to follow the defendant. When defendant stopped at a gas station, the officers went over to the car and spoke with the defendant and his passenger. Both Officers Fesler and Dorrell saw puncture marks and scabs on the back of defendant's right hand and inside his forearm. Upon making this observation, they arrested defendant and took him to the police station where he was further examined.

At the trial counsel for defendant stipulated that both Officer Fesler and Officer Dorrell were qualified experts in the field of narcotics.

Officer Fesler testified that between 1958 and the time of the arrest in 1963, he had examined the defendant approxi-

---

[1]Vehicle Code, section 23105, provides: ''It is unlawful for any person who is addicted to the use, or under the influence, of narcotic drugs or amphetamine or any derivative thereof to drive a vehicle upon any highway. Any person convicted under this section is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not less than 90 days nor more than one year or by a fine of not less than two hundred dollars ($200) nor more than five thousand dollars ($5,000) or by both such fine and imprisonment.''

mately 10 times for evidence of use of narcotics. The officer testified that on all previous occasions except one he concluded that the defendant had been using narcotics. On one of these occasions, in October 1962, ''defendant stated that he was chipping with narcotics but that he wasn't hooked.'' The scabs on defendant's hands at the time of the arrest appeared to be from a day to three weeks old. Based on his prior knowledge of defendant and the appearance of the marks and scabs on defendant's arm and hand, Officer Fesler was of the opinion at the time of the arrest that defendant was addicted to the use of narcotics.

Officer Dorrell also testified that he had prior knowledge that defendant was a narcotics user, and that at the time of the arrest he was of the opinion that defendant was an addict, based on prior contact with defendant and on the scabs and marks on defendant's arms and hands. In the opinion of this witness, some of the injection marks had been made within the last day or two, while others showed varying ages up to three weeks.

After defendant was arrested, Officers Dorrell and Fesler took him to the narcotics division at the police building and further examined him. There pictures and charts of the marked and scabbed areas were made. These were received in evidence. The marks described by the witnesses indicated a series of punctures over the veins of the arms and hands characteristic of the injection of narcotics over a period of time. Also, Officer Dorrell examined defendant's eyes in a darkened room with a light and noted that the reaction was slower than that of a normal person. The examination at the police building confirmed the opinion of the officers that defendant was addicted, though he did not then appear to be under the influence of narcotics.

No evidence was offered on behalf of defendant except a stipulation that if defendant were called as a witness, he would testify ''that he had not used any narcotic in the last 30 days prior to arrest.''

There is no merit in defendant's contention that his conviction was the result of an unlawful search. The record shows no search of defendant or his automobile prior to his arrest. Defendant's hands, with their incriminating marks and scabs, were in plain sight. It was not improper for the officers to take cognizance of what they saw. (*People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381].)

This is not a case like *People* v. *Ferguson,* 214 Cal.App.

2d 772, 775 [29 Cal.Rptr. 691], or *People* v. *Ibarra,* 60 Cal. 2d 460, 463 [34 Cal.Rptr. 863, 386 P.2d 487], where the officers relied entirely upon the observation of puncture marks to justify the arrest. Since the officers had seen defendant driving a motor vehicle, and since they had reasonable cause to believe he was an addict, it was their duty to arrest him for violation of section 23105.

 Despite the fact that defendant, at the trial, stipulated that the police officers were qualified to express an opinion as to his addiction, defendant now contends that their testimony is not sufficient proof to support the conviction. He argues that the testimony of a medical doctor is necessary, as it is for a civil commitment of an addict under Welfare and Institutions Code, section 5350, and Penal Code, sections 6450 and 6500.

In *People* v. *Kimbley,* 189 Cal.App.2d 300, at page 304 [11 Cal.Rptr. 519], the court pointed out that the word "addicted" as used in Vehicle Code, section 23105, is not a word of art or a technical word at all. The word is to be given its common meaning, that is, strongly disposed or habituated. The reasoning of that opinion has been approved and adopted by the Supreme Court. (See *In re De La O,* 59 Cal.2d 128, 153 [28 Cal.Rptr. 489, 378 P.2d 793].) Convictions for violation of Vehicle Code, section 23105, based entirely upon the testimony of qualified police officers have been affirmed in *People* v. *Kimbley, supra; People* v. *Haggard,* 181 Cal.App.2d 38 [4 Cal.Rptr. 898]; and *People* v. *Montez,* 175 Cal.App.2d 303 [345 P.2d 938].

The procedural requirements for a civil commitment of an addict are not applicable to a prosecution under Vehicle Code, section 23105, nor do the civil procedures furnish a useful analogy. A civil proceeding brought under the Welfare and Institutions Code requires a showing that the subject is a "person who habitually takes or otherwise uses to the extent of having lost the power of self-control. . . ." This introduces an element not involved in a prosecution for driving a motor vehicle while addicted. To support a conviction under Vehicle Code, section 23105, it is not necessary to show that the person addicted has "lost the power of self-control."

Moreover, civil commitments for narcotics addiction, whether under the Welfare and Institutions Code or under Penal Code, sections 6450 or 6500, are not for the purpose of punishment, but are for the purpose of treating the condi-

tion and its underlying causes. (See Pen. Code, § 6399; *In re De La O*, 59 Cal.2d 128, 148 [28 Cal.Rptr. 489, 378 P.2d 793].) In the light of this purpose, the Legislature has required that the court have before it the reports of medical examiners before ordering that a person be confined for such treatment. (Pen. Code, §§ 6450, 6502; Welf. & Inst. Code, §§ 5354, 5053.) In prescribing use of medical evidence in the civil proceedings leading to the commitment of addicts for treatment, the Legislature did not lay down any standards for the kind or quantum of proof required to prove a violation of the Vehicle Code.

Finally, defendant refers to *Robinson* v. *California*, 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758], holding that the state may not punish a person for being an addict. Neither the holding nor the rationale of that case is applicable here. Defendant is being punished not for being an addict, but for driving a motor vehicle.

■ "The legislative power to regulate travel over the highways and thoroughfares of the state for the general welfare is extensive. It may be exercised in any reasonable manner to conserve the safety of travelers and pedestrians. Since motor vehicles are instruments of potential danger, their registration and the licensing of their operators have been required almost from their first appearance. The right to operate them in public places is not a natural and unrestrained right, but a privilege subject to reasonable regulation, under the police power, in the interest of the public safety and welfare." (*Watson* v. *Division of Motor Vehicles*, 212 Cal. 279, 283 [298 P. 481].)

■ The purpose of Vehicle Code, section 23105, is to protect those who use the public highways. (See *People* v. *Kimbley, supra,* at p. 306.) The Legislature has concluded, and with reason, that persons addicted to the use of narcotic drugs are bad risks on the highway, and that the public safety requires that such persons be forbidden to drive. The legislative purpose is a proper one and the classification is not arbitrary or unreasonable.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.